IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CR-07-286-C |
| ) | |
| MARKICE LAVERT McCANE, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

Defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Before the Court are Defendant's motion to exclude statements (see Dkt. Nos. 16 & 19) and motion to suppress evidence (see Dkt. Nos. 17 & 18), and the government's response to each (see Dkt. Nos. 25 & 26). On July 8, 2008, the Court conducted an evidentiary hearing on these motions. As announced in open court on that date, Defendant's motions are denied.

I. BACKGROUND

Officer Aaron Ulman of the Oklahoma City Police Department ("OCPD") testified that at approximately 9:30 p.m. on April 18, 2007, he observed Defendant driving a car that was over the marked lane line for approximately three blocks on N.E. 23rd Street in Oklahoma City. When Officer Ulman pulled Defendant over by activating his emergency lights, Defendant stated that his driver's license was suspended. The officer then requested that Defendant sit in the back of the OCPD patrol car. Officer Ulman then verified Defendant's license status and placed Defendant under arrest for driving with a suspended

license. The passenger from Defendant's car also was placed in the back seat of the patrol car.

Officer Ulman then searched the car that Defendant had been driving. In a pocket or compartment on the open driver's-side door, he found a .25 caliber pistol, covered or wrapped by a rag, with seven rounds of ammunition in the magazine. As Officer Ulman returned to the patrol car carrying the gun in order to secure it, Defendant stated, "I forgot that was even there." Officer Ulman then read Defendant his Miranda[1] warnings. Defendant said that he understood his rights, but he refused to waive his right to counsel and to talk to the officer about the incident. Officer Ulman ultimately issued citations to Defendant for driving under suspension and for straddling lane lines.

## II. DISCUSSION

*A. Motion to Exclude Statements*

Defendant requested a hearing pursuant to Jackson v. Denno[2] to determine the voluntariness of the statement made during the events of April 18, 2007, i.e., "I forgot that was even there." According to Defendant, the statement was not freely, voluntarily, or knowingly made because Defendant was subjected to psychological coercion while in

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] 378 U.S. 386 (1964).

custody. In the alternative, Defendant argues that any such statement should be excluded as fruit of the poisonous tree from a traffic stop that violated the Fourth Amendment.[3]

The government concedes that Defendant was in custody from the time that he was arrested, and thus he was in custody when he made the incriminating statement. The government asserts, however, that Defendant's in-custody, pre-Miranda statement was voluntary under the totality of the circumstances and that Defendant was not being interrogated. The government argues that Defendant, a middle-aged, multi-convicted felon and former gang member, realized that he could not "unring the bell" of his reflexive, inculpatory remark and thus refused to talk to an officer after receiving his Miranda warnings.

The Supreme Court has explained that the government bears the burden of proving that Defendant's statement was voluntarily made:

> [W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary.

Lego v. Twomey, 404 U.S. 477, 489 (1972).

The Tenth Circuit has set forth the factors to be considered in determining the voluntariness of a statement:

---

[3] Defendant's Fourth Amendment argument is discussed below in the context of his motion to suppress evidence.

> Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne run afoul of the Fifth Amendment and are inadmissible at trial as evidence of guilt. In determining whether a particular confession is coerced, we consider the following factors: (1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of her constitutional rights; and (5) whether the defendant was subjected to physical punishment. The determination of voluntariness is based on the totality-of-the-circumstances; none of the single factors listed above is determinative. Accordingly, this court must be mindful of all of the circumstances surrounding a defendant's interrogation, including the particular defendant's characteristics.

United States v. Glover, 104 F.3d 1570, 1579 (10th Cir. 1997) (citations omitted). The Fifth Amendment does not preclude the admission of volunteered statements that are freely given. United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993) (citing Miranda, 384 U.S. at 478). "If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible. . . . The test is whether the person's will was overcome, or whether the statement was freely made." Id.

Having heard and considered the parties' evidence, it is clear that the government has met its burden of showing that Defendant's statement was voluntary. Officer Ulman offered credible testimony, essentially unrefuted by Defendant, that Defendant spontaneously uttered this statement in the absence of questioning by any officials. Under the totality of the circumstances, Defendant's statement was not the result of coercion or interrogation. Defendant freely gave this statement and thus its admission is not precluded by the Fifth Amendment, although its utterance preceded Defendant's Miranda warnings. See Muniz, 1 F.3d at 1022.

*B. Motion to Suppress*

The ordinary remedy for a Fourth Amendment violation is suppression of the evidence obtained during the illegal conduct. See United States v. Olivares-Rangel, 458 F.3d 1104, 1108 (10th Cir. 2006). In addition, however, "a defendant may also suppress any other evidence deemed to be 'fruit of the poisonous tree,' (i.e., evidence discovered as a direct result of the unlawful activity), by showing the requisite factual nexus between the illegality and the challenged evidence." Id. at 1108-09.

Defendant moves to suppress all evidence against him, including the gun and ammunition, under the fruit-of-the-poisonous-tree doctrine. According to Defendant, the traffic stop of his car on April 18, 2007, was a "poisonous tree," unsupported by any traffic infraction and thus violative of the Fourth Amendment. He asserts that the evidence seized is therefore inadmissible, tainted "fruit."

*1. Initial Stop*

Traffic stops are analyzed under the principles pertaining to investigative detentions set forth in Terry v. Ohio, 392 U.S. 1 (1968):

> To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first whether the officer's action was justified at its inception, and second whether it was reasonably related in scope to the circumstances which justified the interference in the first place.
>
> . . . .
>
> . . . [A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. . . . It is . . . irrelevant that the officer may have had other subjective

>motives for stopping the vehicle. Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated "any one of the multitude of applicable traffic and equipment regulations" of the jurisdiction.

United States v. Botero-Ospina, 71 F.3d 783, 786, 787 (10th Cir. 1995) (internal quotation marks and footnote omitted) (quoting Delaware v. Prouse, 440 U.S. 648, 661 (1979)).

Defendant asserted in his brief that N.E. 23rd Street east of Martin Luther King Boulevard was undergoing extensive maintenance at the time of his arrest, such that the lane position of every driver was affected and the road condition was very poor, especially on the south side of the eastbound curb line. The Court finds, however, that Officer Ulman's contradictory testimony is credible. Officer Ulman, who has extensive experience with the area of Oklahoma City where Defendant was pulled over, testified that while currently there are road construction zones on N.E. 23rd Street, there was not construction underway in this area on the night of April 18, 2007, that would have necessitated Defendant driving across the lane line for three blocks.

Having considered all of the circumstances of the night of April 18, 2007, it is clear that Officer Ulman had an objectively reasonable, articulable suspicion to undertake a traffic stop. In Botero-Ospina, the Tenth Circuit upheld a traffic stop where the officer had observed a car swerve from the outer lane, straddle the center line, and then swerve back to the outside lane on a stretch of highway. 71 F.3d at 788. Similarly, Officer Ulman reasonably believed that Defendant was violating city traffic laws with a continuing lane violation that prevented other cars from passing. See also United States v. Zabalza, 346 F.3d

1255, 1257-59 (10th Cir. 2003) (concluding that an initial traffic stop was reasonable under the Fourth Amendment where defendant's vehicle had crossed over the center line twice). In addition, Officer Ulman's observations of Defendant "were sufficient to create a reasonable suspicion that [Defendant] might be sleepy or impaired, and could present a risk of harm to himself and others." Id. at 1258 (internal quotation marks omitted). Moreover, even if Officer Ulman had been mistaken in his belief Defendant was violating city traffic ordinances, an officer's "reasonable suspicion may be supported by an 'objectively reasonable' good faith belief even if premised on factual error." United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004).

Thus, because the underlying traffic stop did not violate the Fourth Amendment and there was no primary illegality, the admission of evidence seized as a result is not prohibited by the fruit-of-the-poisonous-tree doctrine.

*2. Search of Automobile*

The warrantless search of the compartment on the driver's-side door of the car that Defendant had been driving did not violate the Fourth Amendment, as it was a search incident to lawful arrest ("SILA"). Because Officer Ulman validly arrested Defendant, the longstanding SILA exception applies to the search of Defendant's vehicle immediately thereafter. After someone is arrested, the government is entitled to a contemporaneous reasonable search which may extend to objects under the arrestee's immediate control. Malone v. Crouse, 380 F.2d 741, 744 (10th Cir. 1967). Under the SILA exception, officers may search the contents of any containers found within an arrested defendant's vehicle as

well as the passenger compartment.  New York v. Belton, 453 U.S. 454, 460-61 (1981).

When Officer Ulman pulled the car over, Defendant had been sitting in the driver's seat, and the driver's side door remained swung open after Defendant was placed in the back seat of the OCPD patrol car.  Officers may justifiably rely on the SILA exception even when the arrestee has been restrained.  See, e.g., United States v. Brothers, 438 F.3d 1068, 1073 (10th Cir. 2006) (holding that the Belton rule applied when the search was conducted within a few minutes of the defendant's lawful arrest and the defendant had not yet been removed from the scene); United States v. Cotton, 751 F.2d 1146, 1148-49 (10th Cir. 1985) (same).[4]

### III.  CONCLUSION

For the reasons set forth herein, Defendant's motion to exclude (Dkt. No. 16) and Defendant's motion to suppress (Dkt. No. 17) are DENIED.

IT IS SO ORDERED this 10th day of July, 2008.

_____
ROBIN J. CAUTHRON
United States District Judge

---

[4] Defendant makes an additional argument that the car – which was not owned by Defendant – should have been released to his passenger rather than impounded by OCPD.  OCPD claims that the impoundment took place according to its usual policy.  Because the disputed evidence was lawfully found pursuant to SILA rather than an inventory search, see, e.g., United States v. Tueller, 349 F.3d 1235 (10th Cir. 2003), however, the Court need not make any finding regarding the propriety of impounding the car.